## Judge Berman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COPY

-------------------------------------X

ANDREA EMANUEL,

08 CV 1250

Plaintiff,

**COMPLAINT**

- against -

STATE OF NEW YORK, DEPARTMENT OF
CORRECTIONAL SERVICES ("DOCS")
LT. SALVATORE MUNAFO, LT. GEORGE
VAN VALKENBURG, LT. ROBERT
MURRAY, SGT. ROBERT WILSON
sued in their individual and
professional capacity,



Defendants.

-------------------------------------X

The Plaintiff, ANDREA EMANUEL, by her attorneys, CRONIN &

BYCZEK, LLP, as and for her Complaint against the Defendants,

respectfully sets forth:

### NATURE OF ACTION

1.    This is an action for damages and equitable relief

under Title I of the Americans with Disabilities Act of 1990

("ADA"), Rehabilitation Act of 1973, 42 U.S.C. §1983, 42 U.S.C.

§12101, et seq., Fourteenth Amendment §5 of the United States

Constitution, Equal Protection Clause, 42 U.S.C. §12202 to correct

unlawful employment practice on the basis of Plaintiff's

disability and to make Plaintiff whole.    Plaintiff also claims

that she was retaliated against for her prior complaints to DOCS

supervisors and New York State Division of Human Rights.

Defendants deprived Plaintiff of a reasonable accommodation and

altered the terms and conditions of her employment because of her disability.

2.    This is also an action for declaratory relief and pecuniary damages to secure protection of and to redress deprivation of rights secured by the United States Constitution.

## JURISDICTION

3.    This is an action for damages and equitable relief under Title I of the Americans with Disabilities Act of 1990 (ADA), the Rehabilitation Act of 1973, 42 U.S.C. §1983, Fourteenth Amendment §5 of the United States Constitution and Equal Protection Clause and for retaliation against Plaintiff in violation of ADA, and 42 U.S.C. §12101 et seq.

4.    Jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1337, 1343 and 1345.   This action is authorized and instituted pursuant to §107(a) of the ADA, 42 U.S.C. §12117(a), pursuant to §102 of the Civil Rights Act of 1991 and 42 U.S.C. §1983.

5.    The rights, privileges, and immunities sought herein to be redressed are also secured by the Equal Protection and Due Process clauses of the Fourteenth Amendment of the United States Constitution.

6.    Venue is proper within this District, as the acts complained of were and are being committed within its boundaries.

## PREREQUISITES FOR ADA
## <u>DISCRIMINATION AND SUBSEQUENT RETALIATION</u>

7.   On or about June 27, 2007, Plaintiff filed a Complaint of employment discrimination with New York State Division of Human Rights, and the United States Equal Employment Opportunity Commission ("EEOC").

8.   Said Complaint charged employment discrimination and retaliation against Plaintiff by Defendants because of Plaintiff's disability and the State's retaliation against her in violation of ADA, hostile work environment and retaliation for prior complaints against Defendants.

9.   Subsequent to Plaintiff's filing of the charge, Plaintiff's counsel, after requesting the Right to Sue letter on November 7, 2007, received via facsimile a copy of the Notice of Right to Sue on November 8, 2007.  Said letter advised Plaintiff that she has the right to institute a civil action under Title I of the Americans with Disabilities Act of 1990 (ADA).

10.   This lawsuit is commenced within ninety (90) days of receipt of said notice.  A copy of Notice of Right to Sue letter is attached as **Exhibit "A"**.

## <u>PARTIES</u>

11.   Plaintiff EMANUEL, is a resident of City, County and State of New York, is over twenty one (21) years of age, and is a citizen of the United States.

12.   Plaintiff has Asthma, Graves disease and a Hyper.

Thyroid which physically and mentally substantially impairs one or more major life activities.

13.   Plaintiff is employed by DOCS at Lincoln Correctional Facility located at 31 West 110th Street, New York, New York, and has been so employed with DOCS since May 2, 1988.

14.   At all times herein, the State of New York, acting through the New York State Department of Correctional Services ("DOCS"), was responsible for the policy, practice, supervision, implementation, and conduct of all DOCS matters and was responsible for the appointment, training, supervision, and conduct of all DOCS personnel, including the individual Defendants referenced herein.  In addition, at all relevant times, the State of New York was responsible for enforcing the rules of the DOCS, and for ensuring that DOCS personnel obey the laws of the United States and the State of New York.

15.   At all times material herein, the DOCS employed the Defendants, SALVATORE MUNAFO, SGT. ROBERT WILSON, GEORGE VAN VALKENBURG, and ROBERT MURRAY who were all supervisory staff at Lincoln Correctional Facility acting in the capacity of agents, servants, and employees of the DOCS, and within the scope of their employment as such.

16.   Defendant, LT. SALVATORE MUNAFO ("MUNAFO") was at all relevant times an employee of "DOCS" and a Lieutenant at Lincoln Correctional Facility, and Plaintiff's supervisor at the Lincoln Correctional Facility.  He was involved in the harassment and retaliation of the Plaintiff as a result of Plaintiff's prior opposition and complaints of harassment and retaliation within

4

Lincoln C.F. and complaints to other supervisors and policy makers within Lincoln C.F. regarding MUNAFO'S condoning retaliatory conduct against Plaintiff. MUNAFO is being sued in his individual and official capacity.

17. Defendant Lieutenant GEORGE VAN VALKENBURG ("VAN VALKENBURG") was at all relevant times an employee of "DOCS" and Plaintiff's supervisor at the Lincoln Correctional Facility. VAN VALKENBURG holds the rank of Lieutenant. VAN VALKENBURG was involved in the harassment and retaliation of the Plaintiff as a result of Plaintiff's complaints to EEOC and New York State Division of Human Rights ("NYSDHR"), other supervisors and policy makers within "DOCS" regarding ADA discrimination, harassment and retaliatory conduct on the parts of the individual Defendants. VAN VALKENBURG is being sued in his individual and official capacity.

18. Defendant Lieutenant ROBERT MURRAY ("MURRAY") was at all relevant times an employee of "DOCS" and Plaintiff's supervisor at the Lincoln Correctional Facility. MURRAY holds the rank of Lieutenant. MURRAY was involved in the harassment and retaliation of the Plaintiff as a result of Plaintiff's complaints to EEOC and New York State Division of Human Rights ("NYSDHR"), other supervisors and policy makers within "DOCS" regarding ADA discrimination, harassment and retaliatory conduct on the parts of the individual Defendants. MURRAY is being sued in his individual and official capacity.

19. Defendant SGT. ROBERT WILSON ("WILSON") was at all relevant times an employee of "DOCS" and Plaintiff's supervisor

at the Lincoln Correctional Facility.  WILSON holds the rank of Sergeant.  WILSON was involved in the harassment and retaliation of the Plaintiff as a result of Plaintiff's complaints to EEOC and New York State Division of Human Rights ("NYSDHR"), other supervisors and policy makers within "DOCS" regarding ADA discrimination, harassment and retaliatory conduct on the parts of the individual Defendants.  WILSON is being sued in his individual and official capacity.

20.  At all times alleged herein and in their actions described herein, the Defendants were acting under color of law and under color of their authority as supervisors and policy makers at Lincoln Correctional Facility and the State of New York.

## BACKGROUND

21.  Plaintiff has been employed by DOCS as a Corrections Officer since her date of appointment on May 2, 1988.

22.  Plaintiff has been assigned, at all relevant times, to the Lincoln Correctional Facility located at 31 West 110th Street, New York, New York.

23.  Plaintiff was diagnosed with Graves disease and having a Hyper Thyroid on or about October 2002.

24.  On or about February 2005, Plaintiff was formally counseled by MUNAFO for allegedly having Time and Attendance issues for six different occasions.

25.  Plaintiff disputed MUNAFO's allegations and informed MUNAFO that she should not have been issued formal counseling for

Time and Attendance because one of the dates exceeded the nine months limitation period and another date had been pre-approved by Plaintiff's supervisor and therefore, pursuant to DOCS' Directives, no formal counseling should have been issued.

26.   On February 7, 2005, MUNAFO agreed to remove one of the dates at issue in regards to the Time and Attendance because it did in fact exceed the nine months time period but he refused to remove the other date because he falsely claimed Plaintiff never submitted a doctor's note.

27.   On February 8, 2005, Plaintiff re-submitted proof of the doctor's note and her time off request form depicting pre-approval authorization, which was originally given to MUNAFO and informed him that he had a practice of losing and/or misplacing Plaintiff's doctor's notes on prior occasions.

28.   On or about March 7, 2005, Plaintiff received a modification of her formal counseling that she had originally received from MUNAFO, which included dates when Plaintiff had taken off for bereavement purposes due to the death of her mother-in-law.

29.   Pursuant to the Collective Bargaining Agreement and DOCS' policy and practice, bereavement leave is not to be counted against Time and Attendance.

30.   On May 6, 2005, Plaintiff contacted Superintendent Joseph Williams in regards to MUNAFO's improper and retaliatory disciplinary action against her relating to the counseling that she received from MUNAFO.   Plaintiff accused MUNAFO of discrimination and disparate treatment due to her prior complaints of discrimination within the

7

Lincoln Correctional Facility by DOCS' supervisors.

31.  On or about May 11, 2005, MUNAFO again improperly placed Plaintiff on Time and Attendance and improperly issued a formal counseling letter to Plaintiff.

32.  On or about May 16, 2005, MUNAFO issued an Order for leave without pay against Plaintiff for taking time off despite not having time available for May 17, 2005.

33.  Plaintiff did not take off on May 17, 2005, and in fact worked that day.

34.  Plaintiff complained to her supervisors in reference to MUNAFO's conduct and inappropriate discipline.

35.  Soon thereafter, Plaintiff was reimbursed for the time taken from her as a result of MUNAFO's order.

36.  On or about June 14, 2005, Plaintiff received her Performance Evaluation dated June 1, 2005.  The evaluation was given to her by Sgt. Bisso.  Sgt. Bisso informed Plaintiff that he was told by MUNAFO that he was to change her evaluation and he would not have done so if not for the fact that he was still on probation, otherwise he never would have changed his original evaluation, which was more positive.

37.  On or about May 16, 2006, Plaintiff was issued formal counseling from WILSON at the direction of MUNAFO regarding Time and Attendance issues.  The dates involved in the Time and Attendance were dates that Plaintiff was in fact at work or were passed the nine months time limit for when they can be raised as a Time and Attendance and issue.

38.   On or about May of 2006, MUNAFO placed Plaintiff on AWOL status because he claimed that she was not at work on April 4, 2006 and April 14, 2006, despite the fact that she was actually at work.

39.   On June 22, 2006, Plaintiff filed a grievance with DOCS in regards to MUNAFO's inappropriate issuance of formal counseling regarding Time and Attendance and AWOL.

40.   On or about July 2006, Plaintiff assisted another female correction officer in bringing a charge of discrimination against the Defendants for gender discrimination within Lincoln Correctional Facility.   Defendants were aware of Plaintiff's involvement and that she provided testimony to a Representative of the New York State Division of Human Rights in regards to discrimination.

41.   On or about September 2006, an Arbitration Hearing was held in regards to Plaintiff's grievance.   The Arbitrator ruled in favor of the Plaintiff and ordered that all Time and Attendance counseling letters be removed from her file.

42.   Plaintiff was diagnosed with Asthma on or about October 2006.

43.   On or about November 2006, Plaintiff was improperly issued a formal counseling from WILSON at the direction of MUNAFO for leaving her post despite the fact that she had obtained prior permission from WILSON to leave her post and go to the restroom. Another correction officer who was working with Plaintiff in the Restricted Housing Unit at the time, had left the unit prior to Plaintiff to use the restroom without obtaining any permission but was never disciplined by WILSON or MUNAFO.

9

44. As a result of Plaintiff being diagnosed with Graves disease, Hyper Thyroid and Asthma, she suffers from a disability under the ADA.

45. Plaintiff's disability is a physical and mental impairment, which affects a major life activity in regards to her ability to perform strenuous and exhausting activities, shortness of breath, and an inability to climb voluminous staircases and exposed to fumes that affect the repertory system.

46. Defendants were aware of Plaintiff's disability based on medical records Plaintiff has disclosed to Defendants and filed in Plaintiff's personnel file along with Plaintiff verbally informing Defendants of same.

47. On June 7, 2007 Plaintiff was assigned to Restricted Housing Unit at Lincoln Correctional Facility. On said date Defendants had directed the maintenance workers and approximately 4 or 5 inmates to paint the Restricted Housing Unit office and the common area.

48. At approximately 7:50 a.m. on June 7, 2007 Plaintiff spoke with MURRAY to advise him if the facility was going to take the same actions from the day before (June 6, 2007) and remove everyone from the Restricted Housing Unit including the inmates and place the inmates in a different part of the facility based on the paint fumes that were being inhaled by the inmates. MURRAY stated that he was not going to remove the inmates and that only one room would be painted so that no one would be overwhelmed with the paint fumes.

49. Plaintiff diaried Murray's directive in the logbook.

50.   At approximately 8:08 a.m. on June 7, 2007 Plaintiff spoke with her immediate supervisor WILSON and told him of her concerns regarding painting in the area that she was working. Plaintiff requested WILSON to accommodate her and reassign her to a different area while the painting was taking place because of her Asthma. WILSON denied Plaintiff's request for an accommodation knowing that Plaintiff suffered from Asthma.

51.   WILSON told Plaintiff that she could ask Officer Guzman to switch with her despite the fact that Officer Guzman also suffered from Asthma and would have the same reaction as the Plaintiff.

52.   Plaintiff did not have the authority to tell another Correction Officer to switch posts with her.  Said directive had to come from a supervisor.

53.   WILSON never ordered Officer Guzman to switch posts with Plaintiff.

54.   Plaintiff attempted to perform her duties at the Restricted Housing Unit where the painting was continuing and performed the duty of taking the count of the inmates.  While taking the count with the paint fumes engulfing her, Plaintiff began to gulp for air and became dizzy and light headed to the point where she felt she would faint.

55.   Plaintiff was forced to leave the Restricted Housing Unit due to an Asthmatic attack.  She went next door to the 4th floor in order to use the telephone and call in the count to the Watch Commander.  VAN VALKENBURG answered the phone and demanded to know why Plaintiff was calling from the 4th Floor instead of the

Restricted Housing Unit. Plaintiff informed VAN VALKENBURG that as a result of her Asthma attack, she could no longer stay in the Restricted Housing Unit area while the painting was continuing.

56. At approximately 8:45 a.m. on June 7, 2007 Plaintiff returned to the Restricted Housing Unit and immediately called WILSON to request that she be relieved so that she could go to the medical unit as a result of her Asthma attack and that she would be repositioning herself to the rear of the 4th floor until relief arrives.

57. On or about 8:57 a.m. on June 7, 2007 Plaintiff is relieved from her duties at the Restricted Housing Unit by C.O. Olufemi John and proceeds to go to the medical unit for treatment.

58. Plaintiff waited in the medical unit for approximately one hour until she began to be treated by Nurse Hernandez. Nurse Hernandez found that Plaintiff's breathing was weak and immediately administered a nebulizer treatment.

59. At approximately 11:15 a.m. on June 7, 2007 WILSON arrived at the medical unit and informed the Plaintiff that he spoke with VAN VALKENBURG and MURRAY so that he could reassign her to a different post. WILSON said that the two lieutenants denied his request. Nurse Hernandez stated to Plaintiff "oh see, this is what happens when they don't like certain people."

60. Once the medical treatment rendered to Plaintiff was completed, WILSON called the medical unit and told Plaintiff that he spoke to VAN VALKENBURG and MURRAY again and again they both denied her request for an accommodation to be reassigned and that she would

12

have to go back to her original post, where the painting was taking place.

61.    At approximately 12:00 p.m. on June 7, 2007, Plaintiff filled out an incident/accident report.  Plaintiff initially filled out the report by stating that she had an "asthma attack".  However, when Nurse Hernandez saw what Plaintiff wrote she told Plaintiff to change the wording to state "tightness of the chest and shortness of breath".

62. Soon  thereafter,  Plaintiff  went  home  prior  to  the completion of her shift because she could not go back to the Restricted Housing Unit and Defendants refused to accommodate her.

63.  On or about 12:30 p.m. after Plaintiff had left the facility,  Defendants  immediately  placed  fans  in  the  Restricted Housing Unit in order to blow the paint fumes away.

64.  On June 7, 2007, Plaintiff had made a previous arrangement to swap with another correction officer for the 3:00 to 11:00 p.m. shift. If Plaintiff was not to cover, the other Correction Officer would  be  regarded  as  AWOL.  As  such,  Plaintiff  came  back  to  the correctional facility at approximately 2:30 p.m. in order to begin her swap assignment at a different location (Processing Area Gate) located on the 1st floor where the paint fumes would not affect her ability to her do her duties.

65.  During  roll  call  for  the  3:00  to  11:00  p.m.  shift, Officers Ferguson and Kramer were assigned to the Restricted Housing Unit.

66.  Upon information and belief, Officer Ferguson went to the

13

Restricted Housing Unit to begin her assignment.  She immediately became sick from the paint fumes and left her post without authorization or relief.  Officer Ferguson eventually went home.

67.  Officer Ferguson was never disciplined for leaving her post without permission or relief contrary to the action taken against the Plaintiff.

68.  Upon information and belief, Officer Kramer, who suffers from Asthma, called VAN VALKENBURG and requested a relief officer because she could not work in the Restricted Housing Unit as a result of the fumes.  VAN VALKENBURG approved Kramer's request.

69.  Officer Kramer was permitted to go home early as a result of her inability to work in the Restricted Housing Unit without any disciplinary action being taken against her contrary to the action taken against the Plaintiff.

70.  The Defendants ordered Officer Munroe and Officer Locke to relieve Ferguson and Kramer in the Restricted Housing Unit.  Soon thereafter, Officer Munroe began to vomit and Officer Locke began to complain about headaches and neck pain.

71.  Both Officer Munroe and Officer Locke received permission to be relieved from their posts in the Restricted Housing Unit contrary to Plaintiff's similar request earlier in the day.

72.  Plaintiff called in sick the next day, June 8, 2007 due to the Asthma attack that she suffered on June 7, 2007 which resulted in her making an appointment to see her pulmonary doctor.

73.  On or about July 3, 2007 Plaintiff received a Notice of Discipline for leaving her post without authorization despite other

14

similarly situated correction officers being allowed leave their post without authorization or relief and never being disciplined.

74.   Defendants retaliated against Plaintiff for seeking to enforce her rights under State and Federal law in violation of ADA.

75.   Defendants discriminated against the Plaintiff by not making reasonable accommodations for her since the request to be reassigned to a different location would not have imposed an undue hardship, significant difficulty or expense on the operation of the correctional facility.

76.   Plaintiff's complaints of discrimination were protected activities pursuant to the ADA.

77.   Plaintiff possessed a good faith and reasonable belief that her opposition to discrimination under the ADA by filing complaints with the New York State Division of Human Rights and the EEOC resulted in retaliation by the Defendants

### AS AND FOR A FIRST CAUSE OF ACTION
### UNDER THE AMERICANS WITH DISABILITIES ACT

78.   The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "77" with the same force and effect as if fully set forth herein.

79.   At all relevant times, Plaintiff has been an individual with a disability within the Americans with Disabilities Act, 42 U.S.C. §12102(2).   More particularly, Plaintiff has a physical impairment that substantially limits one or more of her major life

activities, has a record of such an impairment, and/or is regarded by Defendants as having such an impairment.

80. Plaintiff is a qualified individual with a disability as that term is defined in §101(8) of the ADA, 42 U.S.C. §12111(8). More specifically, Plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of her job.

81. Defendants are and were Plaintiff's employer and supervisors and are covered by the terms of the ADA.

82. Defendants have refused to make a reasonable accommodation to Plaintiff and/or have refused to offer the same accommodations that they have offered to other similarly situated correction officers.

83. Defendants have altered the terms and conditions of Plaintiff's employment because of her disability, to include unlawful and inappropriate disciplinary action.

84. Defendants failure to make reasonable accommodations to Plaintiff's physical disability and their disparate treatment of the Plaintiff constitutes discrimination against Plaintiff with respect to the terms, conditions, or privileges of employment. Defendants' actions constitute a violation of Sections 102(b)(5)(A) of the ADA, 42 U.S.C. §12112(b)(5)(A).

85. Defendants acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

86. As a direct and proximate result of Defendants' discrimination on the basis of disability or perceived disability, Plaintiff has suffered lost wages and benefits.

87. Defendants' failure to make a reasonable accommodation to Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, as well as other non-pecuniary losses.

88. As a consequence of Defendants' unlawful employment practices, Plaintiff is entitled to compensatory damages in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS together with interest.

89. Individual Defendants' violation of the ADA was willful, and Plaintiff is entitled to punitive damages in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS.

### AS AND FOR A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

90. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "89" with the same force and effect as if fully set forth herein.

91. Plaintiff was engaged in activity protected by the ADA wherein she filed complaints of discrimination due to her disability.

92. Defendants were aware that Plaintiff had filed complaints with EEOC and New York State Division of Human Rights regarding discrimination under the ADA.

93. As a result of Plaintiff's filing complaints of discrimination with the New York State Division of Human Rights and EEOC, adverse action was taken against the Plaintiff

94. Plaintiff's complaints to the New York State Division of Human Rights and EEOC and the disciplinary actions taken against her are causally connected.

95. As a consequence of Defendants unlawful employment practices, Plaintiff is entitled to compensatory damages in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS together with interest.

96. Individual Defendants' violation of the ADA was willful, and Plaintiff is entitled to punitive damages in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS.

## AS AND FOR A THIRD CAUSE OF ACTION PURSUANT TO 42 U.S.C. §1983 AGAINST ALL DEFENDANTS

97. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "96" with the same force and effect as if fully set forth herein.

98. Throughout the events recited herein, the individual Defendants, while acting under the color of law, subjected the Plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States, and specifically the Equal Protection and Due Process guarantees of the Fourteenth Amendment of the Constitution, Freedom of Speech pursuant to the First and Fifth Amendments of the Constitution and Civil Rights as guaranteed under Article I, Section II, of the New York

State Constitution.

99. Plaintiff has been deprived of her Constitutional Rights to be free of discrimination and retaliation under the ADA based upon her disability and opposition to discrimination and workplace violations and has been damaged and suffered emotional distress, economic damages and conscious pain and suffering as a result of these actions.

100. The actions of Defendants, in depriving Plaintiff of her constitutional and civil rights, as hereinbefore stated, were willful and malicious acts.

101. In addition to Plaintiff, Defendants have similarly violated the rights of other disabled officers, all as part of a deliberate policy and practice and a deliberate course of conduct.

102. As a result of the aforesaid wrongful, reckless and intentional acts of the Defendants, the Plaintiff has been damaged in the amount of ONE MILLION ($1,000,000.00) DOLLARS.

103. Based on the foregoing, Plaintiff is entitled to punitive and exemplary damages in the sum of ONE MILLION ($1,000,000.00) DOLLARS.

## AS AND FOR A FOURTH CAUSE OF ACTION PURSUANT TO REHABILITATION ACT OF 1973 (29 U.S.C. §794)

104. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "103" with the same force and effect as if fully set forth herein.

105. At all relevant times, Plaintiff has been an individual with a disability within §7(8) of the Rehabilitation Act of 1973, 29

U.S.C. §706(8).    More particularly, Plaintiff has a physical impairment that substantially limits one or more of his major life activities, has a record of such an impairment, and/or is regarded by Defendants as having such an impairment.

106. Plaintiff is a qualified individual with a disability as that term is defined in §7(8) of the Rehabilitation Act of 1973, 29 U.S.C. §706(8).    More specifically, Plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of his job.

107. Upon information and belief, Defendants are the recipients of federal financial funding.

108. Defendants have refused to make a reasonable accommodation to Plaintiff and/or have dispensed with the reasonable accommodation they had been providing.

109. Defendants have altered the terms and conditions of Plaintiff's employment because of her disability to include proffering invalid, inappropriate and unlawful disciplinary charges.

110. Defendants failure to make reasonable accommodations to Plaintiff's physical disability and their disparate treatment of the Plaintiff constitutes discrimination against Plaintiff with respect to the terms, conditions, or privileges of employment.    Defendants' actions constitute a violation of §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

111. Defendants acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

20

112.  As a direct and proximate result of Defendants discrimination on the basis of disability or perceived disability Plaintiff has suffered lost wages and benefits.

113. Defendants' failure to make a reasonable accommodation to Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, as well as other non-pecuniary losses.

114. As a consequence of Defendants' unlawful employment practices, Plaintiff is entitled to compensatory damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS together with interest.

115. Defendants' violation of the ADA was willful, and Plaintiff is entitled to punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS.

## AS AND FOR A FIFTH CAUSE OF ACTION
### BASED ON HOSTILE WORK ENVIRONMENT

116. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" to "115" with the same force and effect as if fully set forth herein.

117. The Defendants intentionally and wrongfully discriminated against the Plaintiff in her employment on the account of her disability and retaliated by creating a hostile work environment in violation of the Constitution of the United States and applicable statutes.

118. Defendants knew or should have known that their Defendant-employees have a propensity to act in a harassing and discriminatory manner.

119. Defendants' harassments were severe and pervasive so as to alter the conditions of Plaintiff's employment causing Plaintiff to be unjustly disciplined.

120. As a result, the Defendants' actions created an abusive working environment in that the Plaintiff was verbally harassed in the presence of supervisors and fellow employees.

121. The Defendants' conduct caused irreparable damage to the Plaintiff.

122. As a result of these negligent, wrongful, careless, reckless and intentional acts of the Defendants, Plaintiff suffered severe and extreme emotional distress and conscious pain and suffering.

123. As a result of the Defendants' conduct, the Plaintiff has been damaged in the amount of One Million ($1,000,000) Dollars.

### AS AND FOR A SIXTH CAUSE OF ACTION PURSUANT TO 42 U.S.C. §1983 FOR FIRST AMENDMENT RETALIATION

124. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" to "123" with the same force and effect as if fully set forth herein.

125. Plaintiff has been unlawfully subjected to a hostile working environment and harassment in retaliation for exercising her First Amendment rights to free speech. The aforementioned

conduct on the part of the Defendants was without cause or justification and violated Plaintiff's rights, privileges and immunities as guaranteed by the First Amendment of the United States Constitution as well as the Constitution of the State of New York and the New York State Division of Human Rights Law.

126. The actions of the Defendants in depriving Plaintiff of her constitutional and civil rights were willful and malicious acts.

127. As a direct and proximate consequence of Defendants' unlawful, discriminatory and harassing conduct, Plaintiff has suffered loss of benefits and privileges of her employment with DOCS, damaged professionally and economically, suffered humiliation as well as physical and emotional pain and suffering.

128. Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of Three Million ($3,000,000.00) Dollars and Punitive and Exemplary damages in the amount of Three Million ($3,000,000.00) Dollars.

## JURY TRIAL

The Plaintiff, ANDREA EMANUEL, requests a jury trial on all questions of fact raised by the Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that this Honorable Court grant the following relief:

A.    For the First Cause of Action against Defendants in the

amount of Five Hundred Thousand ($500,000.00) Dollars; and punitive damages in the amount of Five Hundred Thousand ($500,000.00) Dollars;

B.   For the Second Cause of Action against Defendants in the amount of Five Hundred Thousand ($500,000.00) Dollars; and punitive damages in the amount of Five Hundred Thousand ($500,000.00) Dollars;

C.   For the Third Cause of Action against individual Defendants in the amount of One Million ($1,000,000.00) Dollars and Punitive damages in the amount of One Million ($1,000,000.00) Dollars;

D.   For the Fourth Cause of Action against Defendants in the amount of One Million ($1,000,000.00) Dollars and Punitive damages in the amount of One Million ($1,000,000.00) Dollars;

E.   For the Fifth Cause of Action against Defendants in the amount of One Million ($1,000,000.00) Dollars;

F.   In all causes of action, reasonable attorneys fees, pre judgment interest, costs of this action and for such other relief as this Court may deem just and proper.


Dated:   Lake Success, New York
         February 5, 2008

                    CRONIN & BYCZEK, LLP

                    _Rocco G. Avallone_

                    Rocco G. Avallone (RA8055)
                    1983 Marcus Avenue, Suite C-120
                    Lake Success, New York 11042
                    (516) 358-1700

**EXHIBIT A**

EEOC Form 161 (3/98)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Andrea L. Emanuel<br>2255 5th Avenue Apr. #12F<br>New York, NY 10037 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|
| **EEOC Charge No.** | **EEOC Representative** | | **Telephone No.** |
| 16G-2007-03788 | Holly M. Woodyard,<br>Investigator | | (212) 336-3643 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

| ☐ | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
| ☐ | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| ☐ | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| ☐ | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| ☐ | Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge. |
| ☐ | While reasonable efforts were made to locate you, we were not able to do so. |
| ☐ | You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged. |
| ☐ | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| ☒ | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| ☐ | Other (briefly state) |

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____
Spencer H. Lewis, Jr.,
Director

10/19/07
*(Date Mailed)*

Enclosures(s)

cc: **New York State Dept. of Correctional Facility**
**611 Edgecombe Avenue**
**New York, NY 10032**
**Attn: Human Resource Director**



E'
10/19/07

# CRONIN & BYCZEK, LLP

*Attorneys and Counselors at Law*

The Gateway at Lake Success
1983 Marcus Avenue • Suite C-120
Lake Success, New York 11042
(516) 358-1700 • Facsimile (516) 358-1730
E-Mail: Info@cblawyers.net

LINDA M. CRONIN
CHRISTOPHER S. BYCZEK*

DOMINICK REVITLLINO
ROCCO G. AVALLONE**

HOWARD GREENWALD

OF COUNSEL
CHRISTOPHER FALCONETTI
DORIS RIOS DUFFY

*MEMBER OF NY AND FL BAR
**MEMBER OF NY AND CT BAR

November 7, 2007

Equal Employment Opportunity Commission
33 Whitehall Street
New York, New York 10004

    Re:  Andrea L. Emanuel v. New York State, et al.
    <u>Charge No.:  16GA703788</u>

Dear Sir/Madame:

    This office represents Ms. Andrea L. Emanuel regarding the above-referenced charge of Discrimination.

    Pursuant to the Civil Rights Act, this letter is to request a "right to sue" letter, so that we may commence litigation immediately.

    Thank you for your courtesy and cooperation herein.

    Very truly yours,

    *Rocco G. Avallone*

    Rocco G. Avallone

RGA:sas

*Index No.*                    *Year* 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREA EMANUEL,

                                                    Plaintiff,

             - against -

NEW YORK STATE, DEPARTMENT OF CORRECTIONAL SERVICES (``DOCS''), et al.,

                                                    Defendants.

SUMMONS and COMPLAINT

Cronin & Byczek, LLP
1983 Marcus Avenue
Suite C-120
Lake Success, New York  11042

(516) 358-1700

*To:*

*Attorney(s) for*

*Service of a copy of the within*                          *is hereby admitted.*

*Dated:*
                    ............................................................

                              *Attorney(s) for*

*PLEASE TAKE NOTICE*

☐    that the within is a (certified) true copy of a                              20
NOTICE OF    entered in the office of the clerk of the within named Court on
ENTRY

☐    that an Order of which the within is a true copy will be presented for settlement to the Hon.
NOTICE OF                      one of the judges of the within named Court,
SETTLEMENT  *at*
            *on*                    20        *, at*            *M.*

*Dated:*

                              Cronin & Byczek, LLP
                              1983 Marcus Avenue
                              Suite C-120
                              Lake Success, New York  11042

*To:*