UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

ANDREA EMANUEL,

                           Plaintiff,

           -against-                                    08 Civ. 1250 (RMB)

STATE OF NEW YORK, DEPARTMENT OF
CORRECTIONAL SERVICES ("DOCS"),
LT. SALVATORE MUNAFO,
LT. GEORGE VAN VALKENBURG,
LT. ROBERT MURRAY,
SGT ROBERT WILSON
SUED IN THEIR INDIVIDUAL AND
PROFESSIONAL CAPACITY,

                           Defendants.

-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

ANDREW M. CUOMO
Attorney General of the State
   of New York
Attorney for Defendants
120 Broadway
New York, New York 10271
(212) 416-8118

JULINDA DAWKINS
Assistant Attorney General
   *of Counsel*

**TABLE OF CONTENTS**

Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT I    -    PLAINTIFF'S AMERICANS WITH DISABILITIES ACT ("ADA")
CLAIM (COUNT I & II) IS BARRED AND FAILS TO STATE A
CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.    Plaintiff's ADA Claim Against the State and DOCS Is Barred by the Eleventh
Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.    All Claims under the ADA Are Barred by the Applicable Statute of
Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

POINT II    -    PLAINTIFF'S REHABILITATION ACT AND ADA CLAIMS FAIL . . 9

    A.    Plaintiff Has Failed to Alleged That She Has a Disability under the Statute . . . 10

    B.    Neither the Rehabilitation Act Nor the ADA Provides for Individual Liability . 11

POINT III    -    PLAINTIFF'S §1983 DUE PROCESS AND EQUAL PROTECTION
CLAIMS REQUIRE DISMISSAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.    Plaintiff Received Procedural Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    B.    Plaintiff Has Failed to Establish a Substantive Due Process Violation . . . . . . . . 14

    C.    Plaintiff was not denied equal protection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

POINT IV    -    PLAINTIFF'S HOSTILE ENVIRONMENT CLAIM REQUIRES
DISMISSAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

POINT V    -    PLAINTIFF'S COMPLAINT FAILS TO STATE A §1983 FIRST
AMENDMENT RETALIATION CLAIM BECAUSE SHE HAS NOT
ALLEGED ANY ADVERSE ACTION  . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

    A.    Speech Not of Public Concern . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

    B.    No Adverse Employment Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

    C.    There Is No Causal Connection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

POINT VI    -    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO
QUALIFIED IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

POINT VII    -    PLAINTIFF'S CLAIMS IN THE FIRST, SECOND, FOURTH,
FIFTH AND SIXTH CAUSES OF ACTION AGAINST THE
STATE, DOCS AND THE INDIVIDUAL DEFENDANTS IN THEIR
OFFICIAL CAPACITIES ARE BARRED BY THE ELEVENTH
AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

## TABLE OF AUTHORITIES

**CASES**                                                                                      Page

AOL Time Warner Inc. Securities Litigation,
    2007 WL. 1789013 (S.D.N.Y. June 20, 2007) .................................................................. 6

Alfano v. Costello,
    294 F.3d 365 (2d Cir.2002) ...................................................................... 16, 18

Baldwin County Welcome Cir. v. Brown,
    466 U.S. 147,148 n.1, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984) ....................................... 9

Barton v. City of Bristol,
    294 F. Supp. 2d 184 (D. Conn. 2003) ....................................................... 12, 14

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007) ............................................................................. 6, 7

Bishop v. Porter,
    2003 WL. 21032011 (S.D.N.Y. May 8, 2003) ................................................... 6

Blum v. Schlegel,
    18 F.3d 1005 (2d Cir. 1994) ..................................................................... 19

Board of Trustees v. Garrett,
    531 U.S. 356, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001) ................................... 8

Brennan v. Metropolitan Opera Association, Inc.,
    192 F.3d 310 (2d Cir. 1999) .................................................................. 16,17

Carrasquillo v. City of New York,
    324 F. Supp. 2d 428 (S.D.N.Y. June 25, 2004) .............................................. 12

City of Cleburne v. Cleburne Living Ctr., Inc.,
    473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) ................................. 15

Clark County Sch. Dist. v. Breeden,
    532 U.S. 268, 273-274(2001) ................................................................... 23

Cleveland Board Of Education V. Loudermill,
    470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) ................................. 13

Connick v. Myers,
    461 U.S. 138, 75 L. Ed. 2d 708, 103 S. Ct. 1684 ..................................... 18, 19

County of Sacramento v. Lewis,
    523 U.S. 833, 140 L. Ed. 2d 1043, 118 S. Ct. 1708 (1998) ........................................... 14

Cruz v. Coach Stores, Inc.,
    202 F.3d 560, 570 (2d Cir. 2000) ................................................................................... 17

Darcy v. Lippman,
    2008 U.S. Dist. LEXIS 18170 (S.D.N.Y. Mar. 7, 2008) ......................................... 10, 11

Defore v. Premore,
    86 F.3d 48 (2d Cir. 1996) ............................................................................................... 24

Deters v. Lafuente,
    368 F.3d 185, 190 (2d Cir. 2004) ................................................................................... 22

Diesel v. Town of Lewisboro,
    232 F.3d 92 (2d Cir. 2000) ............................................................................................. 22

Doe v. Goord,
    2004 WL. 2829876 (S.D.N.Y. Dec. 10, 2004) ................................................................. 6

Dube v. State University of New York,
    900 F.2d 587 (2d Cir. 1990),
    cert. denied, 501 U.S. 1211 (1991) ................................................................................ 25

Engquist v. Or. Department of Agriculture,
    2008 U.S. LEXIS 4705 (U.S. June 9, 2008) ................................................................... 15

Ezekwo v. New York City Health & Hospital Corp.,
    940 F.2d 775 (2d Cir. 1991) ........................................................................................... 20

Faragher v. City of Boca Raton,
    524 U.S. 775, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998) .............................................. 17

Gentile v. Potter,
    509 F. Supp. 2d 221, 236 (E.D.N.Y. 2007) .................................................................... 10

Hallett v. New York State Department of Correctional Services,
    109 F. Supp. 2d 190 (S.D.N.Y. 2000) ............................................................................ 12

Harlen Associates v. Inc. Village of Mineola,
    273 F.3d 494 (2d Cir. 2001) ........................................................................................... 15

Harlow v. Fitzgerald,
    457 U.S. 800 (1982) ................................................................................................. 23, 24

-iv-

Harris v. Forklift System, Inc.,
    510 U.S. 17, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993) .................................................. 17

Iqbal v. Hasty,
    490 F.3d 143, 2007 WL 1717803, at *11 (2d Cir. June 14, 2007) ..................................... 7

Johnson v. Glick,
    481 F.2d 1028, 1033 & n.6 (2d Cir. 1973) ...................................................................... 14

Johnson v. Newburgh Enlarged Sch. Dist.,
    239 F.3d 246, 252 (2d Cir. 2001) .................................................................................. 14

Kamen v. American Telegraph & Telegraph Co.,
    791 F.2d 1006 (2d Cir. 1986) ........................................................................................... 6

Koehler v. City of New York,
    2005 U.S. Dist. LEXIS 8901 (S.D.N.Y. 2005) ............................................................... 13

Kramer v. Time Warner, Inc.,
    937 F.2d 767, 773 (2d Cir. 1991) ..................................................................................... 7

Krause v. Bennett,
    887 F.2d 362 (2d Cir. 1989) ........................................................................................... 23

Leibovitz v. N.Y. City Transit Authority,
    252 F.3d 179 (2d Cir. 2001) .................................................................................... 16, 18

Lewis v. Cowen,
    165 F.3d 154 (2d Cir.),
    cert. denied, 528 U.S. 823, 145 L. Ed. 2d 60, 120 S. Ct. 70 (1999) ............................... 19

Lyons v. Legal Aid Society,
    68 F.3d 1512 (2d Cir. 1995) ........................................................................................... 10

Makarova v. United States,
    201 F.3d 110 (2d Cir. 2000) ............................................................................................. 6

Menes v. CUNY,
    92 F. Supp. 2d 294 (S.D.N.Y. 2000) .............................................................................. 12

Meritor Sav. Bank, FSB v. Vinson,
    477 U.S. 57, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986) ............................................... 16, 18

Mitchell v. Forsyth,
         472 U.S. 511, 526 (1985) ................................................................................. 24

Morris v. Lindau,
         196 F.3d 102 (2d Cir. 1999) ............................................................. 18, 21, 22

Narumanchi v. Bd. of Trustees,
         850 F.2d 70, 72 (2d Cir. 1988) ...................................................................... 12

Natale v. Town of Ridgefield,
         927 F.2d 101 (2d Cir. 1991) ........................................................................... 24

Neville v. Goord,
         2004 U.S. Dist. LEXIS 21938 (W.D.N.Y. Sept. 28, 2004) ........................... 12

Oncale v. Sundowner Offshore Services,
         523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) .................................. 16

Pennhurst State School & Hospital v. Halderman,
         465 U.S. 89 (1984) ......................................................................................... 25

Perry v. Ethan Allen, Inc.,
         115 F.3d 143, 149 (2d Cir. 1997) ................................................................... 16

Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.,
         506 U.S. 139 (1993) ....................................................................................... 25

Quern v. Jordan,
         440 U.S. 332 (1979) ....................................................................................... 25

Rao v. New York City Health & Hospitals Corp.,
         905 F. Supp. 1236 (S.D.N.Y. 1995) ............................................................... 19

San Leandro Emergency Medical Group Profit Sharing Plan v. Phillip Morris Cos.,
         75 F.3d 801 (2d Cir. 1996) ............................................................................... 7

Santiago v. N.Y.S. Department of Correctional Svc.,
         945 F.2d 25 (2d Cir. 1991),
         cert. denied, 502 U.S. 1094 (1992) ................................................................. 25

Saucier v. Katz,
         533 U.S. 194 ................................................................................................... 24

Sherlock v. Montefiore Medical Ctr.,
         84 F.3d 522 (2d Cir.1996) ................................................................................. 9

Siegert v. Gilley,
    500 U. S. 226, 232 (1991) .................................................................................. 24

Skehan v. Village of Mamaroneck,
    465 F.3d 96 (2d Cir. 2006) .............................................................................. 15

Smith v. Half Hollow Hills Cent. Sch. Dist.,
    298 F.3d 168, 173 (2d Cir. 2002) .................................................................... 14

Tenenbaum v. Williams,
    193 F.3d 581 (2d Cir. 1999) ............................................................................ 14

Trotman v. Palisades Interstate Park Committee,
    557 F.2d 35 (2d Cir. 1977) .............................................................................. 25

Washington v. County of Rockland,
    373 F.3d 310 (2d Cir. 2004) ............................................................................ 22

Weeks v. New York State Division of Parole,
    273 F.3d 76 (2d Cir. 2001) .............................................................................. 21

White Plains Towing Corp. v. Patterson,
    991 F.2d 1049 (2d Cir.) .................................................................................. 20

Will v. Michigan Dep't of State Police,
    491 U.S. 58, 66 (1989) .................................................................................... 25

Zelnik v. Fashion Inst. of Tech.,
    464 F.3d 217, 225 (2d Cir. 2006) .................................................................... 21

**United States Constitution**

First Amendment  ............................................................................................ passim

Eleventh Amendment ...................................................................................... passim

Fourteenth Amendment  ................................................................................ 8, 14

**FEDERAL STATUTES**

29 U.S.C. § 794(a) ......................................................................................... 10, 12

42 U.S.C. §12101 ................................................................................................. 1

42 U.S.C. §1983 ........................................................................................... passim

42 U.S.C. §§ 12111-12117 ................................................................................... 8

42 U.S.C. § 2000e-5(f)(1) ..................................................................................... 9

§ 504 of the Rehabilitation Act ...................................................... 10, 11, 12

**FEDERAL RULES**

Fed. R. Civ. P. 8(a) ............................................................................................. 6

Fed. R. Civ. P. 6(d) ............................................................................................. 9

Fed. R. Civ. P. 12(b)(1) .................................................................................... 1, 6

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1, 6, 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANDREA EMANUEL,

                              Plaintiff,

          -against-                                          08 Civ. 1250 (RMB)

STATE OF NEW YORK, DEPARTMENT OF
CORRECTIONAL SERVICES ("DOCS"),
LT. SALVATORE MUNAFO,
LT. GEORGE VAN VALKENBURG,
LT. ROBERT MURRAY,
SGT ROBERT WILSON
SUED IN THEIR INDIVIDUAL AND
PROFESSIONAL CAPACITY,

                              Defendants.
------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### Preliminary Statement

          Defendants the State of New York, Department of Correctional Services

("DOCS"), Lt. Salvatore Munafo, Lt. George Van Valkenburg, Lt. Robert Murray and Sgt Robert

Wilson submit this memorandum of law in support of their motion to dismiss the complaint of

plaintiff Andrea Emanuel pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the grounds that:

(a)  plaintiff's Americans With Disabilities Act ("ADA") claim brought pursuant to 42 U.S.C.

§12101 *et seq.* (Counts I & II) is barred by the Eleventh Amendment to the United States

Constitution,  fails to state a cause of action and is time barred; (b) plaintiff fails to allege a

disability under either the ADA or the Rehabilitation Act; (c) plaintiff's §1983 due process and

equal protection claims (Count  III) should be dismissed for failure to state a claim; (d)

plaintiff's hostile environment claim (Count V) should be dismissed for failure to state a claim;

(e) plaintiff's §1983 First Amendment Retaliation claim (Count VI) should be dismissed for failure to state a claim; (f) defendants are entitled to qualified immunity against all claims because the defendants' actions did not violate any clearly established constitutional rights of which they could reasonably have been aware;  and (g) plaintiff's claims against the State, DOCS and the individual defendants in their official capacities are all barred by the Eleventh Amendment.

### Statement of the Facts

For the purposes of this motion to dismiss, all of the facts asserted in plaintiff's complaint are assumed to be true.  Plaintiff, Andrea Emanuel, has been employed with DOCS as a correction officer since May 2, 1988.  See Complaint dated February 5, 2008 annexed to the Declaration of Julinda Dawkins ("Dawkins Decl.") as Exhibit ("Ex.") A, ¶13, 21.  Plaintiff is assigned to the Lincoln Correctional Facility ("Lincoln") located at 31 W. 110th St, NY, NY.  Id. at ¶22.

Plaintiff alleges that she is disabled and afflicted with (a) Asthma, (b)  Graves disease, and (c) Hyper Thyroid.  Id. at  ¶12, 44.  Plaintiff alleges these conditions affect "a major life activity in regards to her ability to perform strenuous and exhausting activities, shortness of breath, and an inability to climb voluminous staircases and exposed to fumes that affect the respiratory system."  Id. at ¶45.  Plaintiff alleges that on or about June 7, 2007, she requested reasonable accommodations for her respiratory problems, and that her requests were denied by her supervisors.  Id. at ¶75.

Prior to the incident on June 7, 2007, that apparently forms the gravamen of her case, plaintiff acknowledges that she had been disciplined several times for "time and attendance

2

issues." Plaintiff had been counseled in February 2005 by defendant Munafo for her absences

from work. See Complaint, ¶24-29. However, plaintiff allegedly successfully contested two

dates that she felt were incorrectly assessed against her. Id. at ¶26, 28. Plaintiff also complained

to the Superintendent about Munafo's allegedly discriminatory and retaliatory behavior in May

2005. Id. at ¶30. In May 2005, when defendant Munafo formally counseled plaintiff for time

and attendance and issued an Order for leave without pay, she complained to her supervisors

about defendant Munafo and was reimbursed the time that was taken from her. Id. at ¶31-35. In

June 2005, plaintiff received her evaluation and was informed that it was not as "positive" as it

should have been because defendant Munafo wanted it to be changed. Id. at ¶36. On or about

May 16, 2006, defendant Wilson formally counseled plaintiff for a time and attendance issue at

the direction of defendant Munafo. Id. at ¶37. Defendant Munafo placed plaintiff on AWOL

status for being absent from work on April 4, 2006 and April 14, 2006. Id. at ¶38. On June 22,

2006, plaintiff filed a grievance regarding the time and attendance issue as well as her placement

on AWOL status. Id. at ¶39. In September 2006, an arbitrator found in plaintiff's favor and

ordered all time and attendance counseling letters removed from her file. Id. at ¶41.

Shortly after she filed her grievance, in July 2006, plaintiff provided testimony to a

representative of the New York State Division of Human Rights ("SDHR") to support a charge

of gender discrimination at Lincoln. Id. at ¶40. In November 2006, plaintiff was formally

counseled by defendant Wilson at the direction of defendant Munafo for leaving her post, even

though she had permission to go to the restroom. Id. at ¶43. Plaintiff alleges that another

correction officer was not disciplined for doing the same thing. Id.

On June 7, 2007, plaintiff was assigned to the Restricted Housing Unit ("RHU") at

3

Lincoln. See Complaint at ¶47. On that date, the RHU office was to be painted by the

maintenance workers and four or five inmates. Id. Plaintiff allegedly spoke to defendant Murray

at 7:50 a.m on June 7, 2007. Id. at ¶48. At which time she inquired whether the inmates were to

be moved to another location. Id. Defendant Murray instructed her not to move the inmates

because only one room would be painted so that no one would be overwhelmed by the fumes. Id.

At approximately 8:08 a.m., plaintiff informed defendant Wilson that she had concerns about the

painting in the area where she was working, and requested he accommodate her by reassigning

her to a different area due to her asthma. Id. at ¶50. Defendant Wilson denied plaintiff's request

for accommodation to be reassigned to a different area. Id. Defendant Wilson told plaintiff to

ask another officer, who was also asthmatic, to switch with her. Id. ¶51.

Plaintiff never requested that the officer switch with her and neither did defendant

Wilson. See Complaint at ¶52-53. While attempting to take the count of the inmates in RHU,

plaintiff was engulfed by paint fumes. Id. at ¶54. Plaintiff alleges that she began to "gulp for

air, and became dizzy and lightheaded to the point where she felt she would faint." Id. Plaintiff

alleges she left RHU to go next door to the 4th floor to use the telephone to call in the count to the

Watch Commander. Id. at ¶55. Plaintiff allegedly spoke with defendant Van Valkenburg who

demanded to know why plaintiff was calling from the 4th floor instead of RHU. Id. Plaintiff

told defendant Van Valkenburg that she left due to an Asthma attack. Id.

At approximately 8:45 a.m. plaintiff returned to RHU where she called defendant Wilson

and requested to be relieved to go to the medical unit. See Complaint at ¶56. Plaintiff also

informed defendant Wilson that she would be repositioning herself to the rear of the 4th floor

until relief arrived. Id. At approximately 8:57 a.m., plaintiff was relieved from her post and she

4

went to the medical unit. Id. at ¶57. Plaintiff was treated by Nurse Hernandez, who found that plaintiff's breathing was weak and immediately administered a nebulizer treatment. Id. at ¶58. At approximately 11:15 a.m., defendant Wilson informed plaintiff that defendants Murray and Van Valkenburg had denied his request to move plaintiff to another post. Id. at ¶59. Some time later, defendant Wilson called the medical unit to say that defendants Murray and Van Valkenburg had again denied the request to have plaintiff reassigned. Id. at ¶60. At approximately 12:00 p.m., plaintiff filled out an incident/accident report indicating that she had "tightness of chest and shortness of breath" instead of an "asthma attack" on Nurse Hernandez' recommendation. Id. at ¶60. Plaintiff left shortly thereafter. Id. at ¶61. Plaintiff returned to the facility for a 3:00-11:00 p.m. shift swap. Id. at ¶64. Plaintiff called in sick on June 8, 2007. Id. at ¶72.

On or about June 27, 2007, plaintiff filed a Charge of Discrimination with SDHR, which was also filed with the United States Employment Opportunity Commission ("EEOC"). Id. at ¶7.

On July 3, 2007, plaintiff received a Notice of Discipline (NOD) for leaving her post without authorization. Id. at ¶73. Plaintiff alleges this was in retaliation for seeking to enforce her rights under State and Federal law. Id. at ¶74. Plaintiff alleges that Officers on the 3:00 p.m. to 11:00 p.m shift were permitted to be relieved of their post and to leave early after the paint fumes made them ill without discipline. Id. at ¶65-71.

The EEOC's Dismissal and Notice of Rights (Right to Sue letter) dated October 19, 2007, addressed to Andrea L. Emanuel at 2255 5th Avenue, Apt. #12F, New York, New York 10037 was faxed to plaintiff's counsel on November 8, 2007. Id. at ¶9.

On February 6, 2008, plaintiff commenced this federal action by filing her Complaint in the Office of the Clerk of the Southern District of New York.

## ARGUMENT

## STANDARD OF REVIEW

The standards of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim, and 12(b)(1), for lack of subject matter jurisdiction, are essentially the same, Doe v. Goord, 2004 WL 2829876, *6 (S.D.N.Y. Dec. 10, 2004); Bishop v. Porter, 2003 WL 21032011, *3 (S.D.N.Y. May 8, 2003), except that in a 12(b)(6) motion the defendant has the burden of proof, while in a 12(b)(1) motion it is the plaintiff who has the burden of proof. Doe v. Goord, 2004 WL 2829876 at fn. 11; Bishop v. Porter, 2003 WL 21032011 at *3. In addition, in resolving a motion made under Rule 12(b)(1), a court "may refer to evidence outside the pleadings." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)(citing Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).

According to the Supreme Court, the "'touchstone for a well-pleaded complaint under Federal Rule of Civil Procedure 8(a) and 12(b)(6) is plausibility.'" AOL Time Warner Inc. Securities Litigation, 2007 WL 1789013, *2 (S.D.N.Y. June 20, 2007)(quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1968, 1974 (2007)). "'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do (citations, quotations marks, and alterations omitted)).'" Id. (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964-65)).

6

The factual allegations of a complaint "'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)(citations omitted))." Id. (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1965)). Indeed, asking for "'plausible grounds to infer [a violation of the law] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the violation]." Id. (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1969)).

According to the Second Circuit, although the Supreme Court is "'not requiring a universal standard of heightened fact pleading,' it is 'requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." Id. at 1969, fn. 3 (quoting Iqbal v. Hasty, 490 F.3d 143, 2007 WL 1717803, at *11 (2d Cir. June 14, 2007)).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the "'court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." Id. at 1969 (quoting Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991)); San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Cos., 75 F.3d 801, 808-09 (2d Cir. 1996)(holding that documents "integral" to the complaint are properly considered on a motion to dismiss).

## POINT I

## PLAINTIFF'S AMERICANS WITH DISABILITIES ACT ("ADA") CLAIM (COUNT I & II) IS BARRED AND FAILS TO STATE A CAUSE OF ACTION

**A.    Plaintiff's ADA Claim Against the State and DOCS Is Barred by the Eleventh Amendment.**

Plaintiff's First Cause of Action alleges that by failing to provide reasonable accommodations for her disability defendants violated Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-12117.  Title I of the ADA prohibits discrimination in the employment of persons with disabilities and requires employers to make certain reasonable accommodations for such individuals.  However, this claim is foreclosed by the Eleventh Amendment.

In Board of Trustees v. Garrett, 531 U.S. 356, 374, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001), the Court concluded that Title I of the ADA was not a valid exercise of Congress' Fourteenth Amendment § 5 power to abrogate the States' Eleventh Amendment immunity because Title I was unsupported by a relevant history and pattern of constitutional violations by the State. Garrett, 531 U.S. at 368.  As the Court noted, neither the ADA's legislative findings nor its legislative history reflected a concern that the States had been engaging in a pattern of unconstitutional employment discrimination on the basis of disability; rather, Congress' focus was discrimination in employment in the private sector, while no mention was made of public employment. Garrett, 531 U.S. at 371-72.  Thus,  the enactment of Title I of the ADA exceeded Congress' authority under § 5 of the Fourteenth Amendment, and any suits brought against the States are barred by the Eleventh Amendment. Id. at 356.

8

**B.    All Claims under the ADA Are Barred by the Applicable Statute of Limitations.**

A plaintiff must file suit within ninety (90) days of receipt of a right to sue letter from the

EEOC.  42 U.S.C. § 2000e-5(f)(1); Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525 (2d

Cir.1996).  A notice by a government agency is presumed to be mailed on the date shown on the

notice.  Sherlock v. Montefiore Medical Ctr., 84 F.3d 522, 525 (2d Cir. 1996).  A party is

presumed to have received a letter sent from the government three days from when it was sent. Id.

(citing Baldwin County Welcome Cir. v. Brown, 466 U.S. 147,148 n.1, 104 S. Ct. 1723, 80 L. Ed.

2d 196 (1984) (per curiam)), see also Federal Rule of Civil Procedure 6(d)(a plaintiff is also

permitted three additional days to account for receipt of mailing).  Here, the Dismissal and Notice

of Rights (Right to Sue letter) addressed to Andrea L. Emanuel at 2255 5th Avenue, Apt. #12F,

New York, New York 10037 from the EEOC is dated October 19, 2007.  See Complaint at ¶9.

However, plaintiff commenced this federal action by filing her Complaint with the Office of the

Clerk of the Southern District of New York on February 6, 2008.  Therefore, plaintiff's claim is

untimely because the ninetieth day if presumed received three days after mailing would be January

22, 2008.[1]    The fact that plaintiff's counsel asked for and received a faxed copy of the letter does

not negate the presumption that plaintiff received a copy of the letter by mail in January 2008.

Accordingly, all claims under the ADA are time barred and should be dismissed.

### POINT II

### PLAINTIFF'S REHABILITATION ACT AND ADA CLAIMS FAIL

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability

---

[1]January 20, 2008 was a Sunday and the following Monday, January 21, 2008, was
Martin Luther King, Jr. Day.

. . . shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

## A.    Plaintiff Has Failed to Alleged That She Has a Disability under the Statute.

To state a claim under the Rehabilitation Act "for discrimination based upon [an] employer's failure to accommodate," a plaintiff must "alleg[e] facts showing:" (1) that the employer receives federal financial assistance[;]" (2) that [the plaintiff] is an individual with a disability within the meaning of the statute . . . [;] (3) that, with or without reasonable accommodation, [the plaintiff] could perform the essential functions of the job[;] and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation." See Darcy v. Lippman, 2008 U.S. Dist. LEXIS 18170,*15-16 (S.D.N.Y. Mar. 7, 2008)(quoting Lyons v. Legal Aid Soc'y, 68 F.3d 1512, 1515 (2d Cir. 1995)).

In evaluating whether a plaintiff meets the first definition of an "individual with a disability" under the Rehabilitation Act, "courts follow [a] three-step process . . . to determine: (1) whether plaintiff had an impairment; (2) whether the impairment affected a major life activity within the meaning of the Rehabilitation Act; and (3) whether the impairment substantially limited the major life activity." See Darcy, 2008 U.S. Dist. LEXIS at *20 (quoting Gentile v. Potter, 509 F. Supp. 2d 221, 236 (E.D.N.Y. 2007) (citation omitted)). The analysis under the ADA is essentially the same.

Plaintiff has failed to allege that she is an "individual with a disability" within the meaning of either statute because her alleged impairments do not "substantially limit a major life

10

activity." See Darcy, 2008 U.S. Dist. LEXIS at *20-21. In Darcy the court found that the plaintiff

failed to meet the first definition of an "individual with a disability" under the Rehabilitation Act

because plaintiff had failed "to adequately allege that his impairment substantially limited a

major life activity." Id. at *21. The plaintiff had "failed to adequately allege that his impairment

substantially limited his working or his breathing." Id. Plaintiff had failed to allege facts

concerning "the nature, severity, duration, and long-term impact" of his impairment on this major

life activity. Id.

Similarly, here the plaintiff has failed to allege facts to support a claim that her impairment

substantially limits her ability to work or breathe. Plaintiff only alleges that her "disability is a

physical and mental impairment, which affects a major life activity in regards to her ability to

perform strenuous and exhausting activities, shortness of breath, and an inability to climb

voluminous staircases and exposed to fumes that affect the repertory system." See Complaint at

¶45 (emphasis added). Therefore, this claim should be dismissed.


**B.    Neither The Rehabilitation Act Nor the ADA Provides for Individual Liability.**

There is no individual liability, in either personal or official capacities, under the ADA and

the Rehabilitation Act.[2]   The language of both the ADA and the Rehabilitation Act clearly and

unequivocally states that "public entities," and "program[s] or activit[ies]," not individuals, are

the subjects of the statutes. Specifically, § 504 of the Rehabilitation Act provides that:

> [n]o otherwise qualified individual with a disability ... shall, solely by reason of his
> or her disability, be excluded from the participation in, be denied the benefits of, or

---

[2]Plaintiff has already withdrawn the ADA claims against the individual defendants in his
opposition to the defendants' request for a pre-motion conference.

be subjected to discrimination <u>under any program or activity</u> receiving Federal financial assistance or under any program or activity conducted by any <u>Executive agency</u> or by the United States Postal Service.

29 U.S.C. § 794(a)(emphasis added).

Accordingly, numerous courts in this Circuit had held that there is no individual liability under the ADA and the Rehabilitation Act.  <u>See</u>, <u>e.g.</u>, <u>Carrasquillo v. City of New York</u>, 324 F. Supp.2d 428, 441(S.D.N.Y. June 25, 2004)("Individuals cannot be named as defendants in ADA suits in either their official or representative capacities");  <u>Neville v. Goord</u>, 2004 U.S. Dist. LEXIS  21938 at *2 (W.D.N.Y. Sept. 28, 2004) ("Individuals cannot be named as defendants in suits under either the ADA or the Rehabilitation Act in their official or representative capacities"); <u>see also</u>, <u>Hallett v. New York State Dep't of Correctional Services</u>, 109 F.Supp.2d 190, 199 (S.D.N.Y. 2000); <u>Menes v. CUNY</u>, 92 F.Supp.2d 294 (S.D.N.Y. 2000).

Therefore, the claims for damages under these statutes must be dismissed in their entirety against the individual defendants.

**POINT III**

**PLAINTIFF'S §1983 DUE PROCESS AND EQUAL PROTECTION
CLAIMS REQUIRE DISMISSAL**

**A.    Plaintiff Received Procedural Due Process.**

"A two-prong test applies to analyze procedural due process claims.  First, 'the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution.'  Second, '<u>if</u> a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process.'"  <u>Barton v. City of Bristol</u>, 294 F. Supp.2d 184, 197 (D. Conn. 2003)(emphasis in original)(<u>quoting</u> <u>Narumanchi v. Bd. of</u>

12

Trustees, 850 F.2d 70, 72 (2d Cir. 1988)). "The essential elements of due process are notice and an opportunity to be heard." Koehler v. City of New York, 2005 U.S. Dist. LEXIS 8901, *17-18 (S.D.N.Y. 2005)(quoting Cleveland Bd. Of Educ. V. Loudermill, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)(due process requires only that a public employee receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."))

Plaintiff asserts that defendants violated her constitutional rights to be free from discrimination and retaliation under the ADA based upon her disability and her opposition to discrimination and workplace violations. See Complaint at ¶99. Plaintiff does not identify any property or liberty interest and does not allege any activity that rises to the level of a deprivation of a liberty or a property interest; this claim must therefore be dismissed.

In any event, in those instances where plaintiff had been "disciplined," her own allegations show that she was able to challenge such discipline. In February 2005, when plaintiff was counseled by defendant Munafo for time and attendance issues plaintiff was able to successfully contest two dates that she felt were incorrect. See Complaint, ¶24-29. Additionally, in May 2005, when plaintiff was formally counseled for time and attendance and received an Order for leave without pay, she complained to her supervisors about defendant Munafo and was reimbursed the time that was taken from her. Id. at ¶31-35. Furthermore, when plaintiff was formally counseled in May 2006, and placed on AWOL status, plaintiff grieved these issues and in September 2006, an arbitrator found in her favor and ordered all time and attendance counseling letters be removed from her file. Id. at ¶37-41. A careful review of plaintiff's complaint indicates that none of the counseling memoranda she received ever led to further

13

discipline. Therefore, the complaint itself describes the procedures available to plaintiff and how she availed herself of them; and this claim should therefore be dismissed.

**B.    Plaintiff Has Failed to Establish a Substantive Due Process Violation.**

"Substantive due-process rights guard against government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." Tenenbaum v. Williams, 193 F.3d 581, 600 (2d Cir. 1999)(citing County of Sacramento v. Lewis, 523 U.S. 833, 843, 140 L. Ed. 2d 1043, 118 S. Ct. 1708 (1998))(internal quotation marks omitted).

> "The protections of substantive due process are available only against egregious conduct which goes beyond merely offending some fastidious squeamishness or private sentimentalism and can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience." Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2d Cir. 2002) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 & n.6 (2d Cir. 1973)). "Malicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience." Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 252 (2d Cir. 2001).

Barton, 294 F. Supp.2d at 198.

Here, plaintiff fails to assert facts that would support a claim that her substantive due process rights were violated. Defendants' alleged conduct does not rise to the level of a malicious and sadistic abuse of government power. The complaint reveals only corrective and disciplinary personnel actions routinely taken against officers. Therefore, the complaint should be dismissed.

**C.    Plaintiff was not denied equal protection.**

The Equal Protection Clause of the Fourteenth Amendment commands that all persons

similarly situated be treated alike. U.S. Const. amend XIV; see City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).    To succeed on an equal protection claim, "Plaintiff must show that: (1) [s]he was treated differently from other similarly-situated individuals; and (2) the differential treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 110 (2d Cir. 2006) (quoting Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (internal quotation marks omitted)).

Plaintiff alleges two instances in which she was allegedly treated differently from her fellow officers.  In November 2006, plaintiff alleges she was formally counseled for leaving her post to use the bathroom when another correction officer, who did the same thing, was not.  See Complaint at ¶43.  On July 3, 2007, plaintiff alleges she received a NOD for leaving her post on June 7, 2007 after she became ill from paint fumes, but the officers on the 3:00 p.m. to 11:00 p.m shift, who also left their posts,  were not. Id. at ¶47-63. . Id. at ¶65-71.

Here, plaintiff has not claimed membership in a protected class, but instead invokes a "class of one" theory of discrimination, by which plaintiff alleges she was treated differently from others similarly situated for no rational reason.  However, the Supreme Court recently held that "the class-of-one theory of equal protection has no application in the public employment context." See Engquist v. Or. Dep't of Agric., 2008 U.S. LEXIS 4705, *28 (U.S. June 9, 2008).  The Court explained that "the Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently." Id. at *24.  A class-of-one theory in the public employment fails because it

15

challenges employment decisions, such as the ones complained of here, which are quite often "subjective and individualized." Id. at *23-24. Recognizing "class of one" claims in employment cases would unduly interfere with the state's exercise of its discretion as an employer. Therefore, plaintiff's equal protection claim must be dismissed.

### POINT IV

### PLAINTIFF'S HOSTILE ENVIRONMENT CLAIM REQUIRES DISMISSAL

To prevail on a hostile work environment claim, a plaintiff must show that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir.2002) (internal quotation omitted); see also Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 78, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) (stating that a hostile work environment is created "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment") (internal quotation omitted)

"The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." Leibovitz v. N.Y. City Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986)); Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999). This test has both objective and subjective elements: the misconduct shown must be "severe or pervasive enough to create an objectively hostile or abusive work environment," and the victim must also subjectively

16

perceive that environment to be abusive. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993). As a general rule, incidents must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)(citation and internal quotation marks omitted). Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness. Brennan, 192 F.3d at 318; see also Faragher v. City of Boca Raton, 524 U.S. 775, 788, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998) (noting that "we have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment").

To decide whether the threshold has been reached, courts examine the totality of the circumstances, considering the severity, frequency, and degree of the abuse. Harris, 510 U.S. at 23 (relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance"); see also Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000).

As evidence of a hostile work environment, plaintiff alleges that she was improperly counseled for time and attendance issues several times in 2005 and 2006. See Complaint at ¶24, 31. She also alleges that she was wrongfully issued an Order for leave without pay in May 2005. Id. at 32. Additionally, in June 2005 her performance evaluation was changed to be less "positive." Id. at ¶36. She also alleges that she was wrongfully placed on AWOL in May 2006. Id. at ¶38. Plaintiff further claims alleges she was  formally counseled for leaving her post in November 2006, and in July 2007, she was given a notice of discipline for leaving her post. Id. at ¶37, 38 and 43.

17

These allegations utterly fail to make out a hostile work environment claim.[3] Her allegations amount to discrete instances of routine disciplinary action taken by her supervisors, and such instances are not properly addressed under the hostile work environment analysis. None of the instances alleged indicate a workplace "that was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." Leibovitz v. N.Y. City Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 91 L. Ed. 2d [*374] 49, 106 S. Ct. 2399 (1986)). Moreover, neither the nature of these actions themselves, nor any allegations in the complaint, raise any inference that this allegedly hostile work environment was created as a result of plaintiff's sex or any other protected status. Alfano, 294 F. 3d at 377. Therefore, this claim should be dismissed.

### POINT V

### PLAINTIFF'S COMPLAINT FAILS TO STATE A §1983 FIRST AMENDMENT RETALIATION CLAIM BECAUSE SHE HAS NOT ALLEGED ANY ADVERSE ACTION

For a public employee to state a valid retaliation claim under § 1983, the employee must allege that (1) her speech was constitutionally protected; (2) she suffered from an adverse employment action; and (3) her speech was a motivating factor behind the adverse employment action. Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).

Here, plaintiff alleges that she was subjected to a hostile working environment and harassment in retaliation for exercising her First Amendment rights to free speech. See Complaint

---

[3] Whether plaintiff's claims are against the State and DOCS under a statute or the individuals under §1983 as an equal protection violation, the standard is the same.

at ¶125. However, plaintiff has failed to allege facts to support this claim.

## A.    Speech Not of Public Concern

As a threshold matter, a public employee's speech is protected by the First Amendment only if it can "be fairly characterized as constituting speech on a matter of public concern." Connick v. Myers, 461 U.S. 138, 146, 75 L. Ed. 2d 708, 103 S. Ct. 1684; see Blum v. Schlegel, 18 F.3d 1005, 1012 (2d Cir. 1994) ("The determinative issue is whether [the speech] arises from the speaker's status as a public citizen or from the speaker's status as a public employee."); see also Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir.) ("In reaching this decision, the court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose."), cert. denied, 528 U.S. 823, 145 L. Ed. 2d 60, 120 S. Ct. 70 (1999).

Plaintiff's complaint alleges five instances in which she allegedly engaged in an activity that might be protected by the First Amendment. Plaintiff alleges she complained to the Superintendent and her supervisors about defendant Munafo in May 2005. See Complaint at ¶30-35. On June 22, 2006, plaintiff filed a grievance. Id. at ¶39. In July 2006, plaintiff provided testimony to a representative of the SDHR in support of another female correction officer's charge of gender discrimination at Lincoln. Id. at ¶40. On or about June 27, 2007, plaintiff filed a Charge of Discrimination with the SDHR, which was also filed with the EEOC. Id. at ¶7.

When the alleged protected speech involves a prior complaint, or grievance, "the fundamental question is whether the employee is seeking to vindicate personal interests or to bring to light a 'matter of political, social, or other concern to the community.'" Rao v. New York City Health & Hosps. Corp., 905 F. Supp. 1236, 1243 (S.D.N.Y. 1995) (quoting Connick, 461

19

U.S. at 146). "Even as to an issue that could arguably be viewed as a matter of public concern, if the employee has raised the issue solely in order to further his [or her] own . . . interest, his [or her] First Amendment right to comment on that issue is entitled to little weight." White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir.).

Here, plaintiff's grievance and complaints were made to "vindicate her personal interests." Plaintiff complained to the Superintendent and her supervisors about defendant Munafo after being counseled for time and attendance issues and being placed on AWOL. See Complaint at ¶30-35. The complaint to her supervisors resulted in plaintiff being reimbursed the time that was taken from her. Id. at ¶31-35. Plaintiff's grievance on June 22, 2006 was to challenge her time and attendance counseling and being placed on AWOL. Id. at ¶39-41. Plaintiff's testimony to the SDHR and the filing of her own subsequent complaint were also motivated by plaintiff's own personal interests. Her testimony to the SDHR representative was a month after she had filed her grievance complaining about the "inappropriate issuance of formal counseling regarding Time and Attendance and AWOL." Id. at ¶39-40. Further, plaintiff's June 27, 2007 SDHR complaint was specific to her own situation on June 7, 2007. Even, if plaintiff's testimony to SDHR and her own SDHR charge were to be considered as protected, the complaint does not indicate that plaintiff had a broader purpose that her own personal concerns for testifying or filing her own charge. See Ezekwo v. New York City Health & Hosp. Corp., 940 F.2d 775, 781 (2d Cir. 1991)(physician's complaints about residency program, including unfair evaluation and discrimination on the basis of race, sex and national origin, were not matters of public concern).

20

**B.    No Adverse Employment Action**

Assuming arguendo that the Court finds that the plaintiff engaged in protected speech, the complaint should be dismissed because plaintiff was not subjected to any adverse employment action.  In determining whether an employment action is adverse in First Amendment retaliation cases, the test is whether the alleged acts "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation marks and citation omitted).  The Second Circuit noted in Zelnik that the alleged retaliatory acts must be "more than de minimis" to constitute adverse employment actions.  Id. at 226.  Adverse employment actions have been found to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand."  Id. (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)).

Plaintiff alleges that defendants Munafo, Wilson, Van Valkenburg and Murray were involved "in the harassment and retaliation of plaintiff" for her making complaints to other supervisors within DOCS, the EEOC and SDHR.  See Complaint at ¶16-19.  Plaintiff alleges that she was formally counseled for time and attendance issues in 2005 and 2006, her performance evaluation was changed in 2005, she was formally counseled for leaving her post in 2006 and given a notice of discipline for leaving her post in July 2007.  None of these actions however, have been held to constitute an adverse employment action.  See Weeks v. New York State Div. of Parole, 273 F.3d 76, 86 (2d Cir. 2001) (finding in employment discrimination case that the receipt of a counseling memo or notice of discipline does not constitute an adverse employment action).  Moreover, there is no allegations in the complaint to indicate that plaintiff was disadvantaged by these alleged actions.  Therefore, plaintiff's claim should be dismissed.

21

## C.    There Is No Causal Connection

Assuming arguendo that the Court finds that the plaintiff was subject to an adverse

employment action for engaging in protected speech, plaintiff has failed to allege a causal

connection between the speech and the adverse action.

In order to establish a causal connection between the protected speech and the adverse

employment action, the plaintiff must show that the speech was a "substantial motivating factor"

of the adverse employment action. Washington v. County of Rockland, 373 F.3d 310, 321 (2d Cir.

2004). In other words, a plaintiff must show that, absent the employee's protected speech, the

adverse employment action would not have been taken. Morris v. Lindau, 196 F.3d 102, 110 (2d

Cir. 1999). This showing requires tangible proof; the plaintiff "'may not rely on conclusory

assertions of retaliatory motive.'" Washington, 373 F.3d at 321 (quoting Deters v. Lafuente, 368

F.3d 185, 190 (2d Cir. 2004)). To survive a motion to dismiss, plaintiff must allege facts

sufficient to support an inference that her protected conduct played a substantial part in the

adverse action taken against her. See Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir.

2000).

Here, plaintiff's complaint fails to meet this standard. Plaintiff alleges that defendants

Munafo, Wilson, Van Valkenburg and Murray were involved "in the harassment and retaliation of

plaintiff" for her making complaints to other supervisors within DOCS, the EEOC and SDHR.

See Complaint at ¶16-19. Plaintiff alleges conducted that would be protected by the First

Amendment beginning in May 2005. However, there is no corollary between the alleged

protected conduct and an alleged adverse employment action. She makes no allegations that the

complaint to the Superintendent is connected to any discipline she received or that the grievance

she filed in June 2006 is related to any other disciplinary action. Instead, plaintiff makes a conclusory allegation that she was retaliated against.

As to plaintiff's allegation that she was retaliated against for giving testimony to SDHR in July 2006, see Complaint at ¶74, and for filing a Charge of Discrimination with the SDHR on or about June 27, 2007, Id. at ¶7, these claims also fail. Plaintiff has failed to allege facts sufficient to provide a temporal proximity between the defendants alleged knowledge of her engagement in the protected activity and the alleged adverse employment action. Plaintiff gave testimony in July but was not formally counseled until four months later in November 2006, for leaving her post. Id. at ¶43. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-274(2001)(holding that action taken 20 months after protected activity suggests no causal connection and citing with approval cases that held that intervals of three and four months were too long). Additionally, it is obvious from a review of the complaint that the July 3, 2007 NOD was contemporaneous or prior to the filing of the plaintiff's SDHR complaint. Plaintiff filed her complaint with the SDHR on June 27, 2007. Thus, it is implausible that the SDHR complaint would have been received by SDHR, processed and the defendants notified of this complaint prior to plaintiff's receipt of the NOD on July 3, 2007, a mere seven days later. Therefore, the complaint should be dismissed.

**POINT VI**

**THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

Government employees are immune from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Krause v. Bennett,

23

887 F.2d 362 (2d Cir. 1989). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" <u>Saucier v. Katz</u>, 533 U.S. 194 (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)). Accordingly when a defendant seeks qualified immunity, "a ruling on that issue should be made early in the proceeding so that the costs and expenses of trial are avoided where the issue is dispositive." <u>Id.</u> The Supreme Court has directed that the initial inquiry must be to determine if a constitutional right was violated in the first instance. <u>Id.</u> (citing, <u>Siegert v. Gilley</u>, 500 U. S. 226, 232 (1991)). Here, the plaintiff has not set forth a cause of action under 42 U.S.C. § 1983. However, even if the Court determines that the plaintiff has set forth a claim, defendants are entitled to qualified immunity.

A public official is entitled to qualified immunity if it is objectively reasonable for an official to believe that he or she was acting within constitutional or statutory bounds. <u>See Natale v. Town of Ridgefield</u>, 927 F.2d 101, 104-5 (2d Cir. 1991). "[Q]ualified immunity is available as a matter of law when the undisputed facts establish that it was objectively reasonable for the defendants to believe that their actions did not violate clearly established rights." <u>Defore v. Premore</u>, 86 F.3d 48, 50 (2d Cir. 1996). Thus, it is necessary to ascertain whether the official's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. at 818.

In this case, all of the defendants' actions were completely within the scope of activity protected by qualified immunity. Here, defendants had no reason to believe that their actions violated the Constitution because, as explained in Point III, defendants did not violate any clearly established due process or equal protection rights. As a result, defendants are entitled to Qualified Immunity and the Complaint should be dismissed.

24

## POINT VII

### PLAINTIFF'S CLAIMS IN THE FIRST, SECOND, FOURTH, FIFTH AND SIXTH CAUSES OF ACTION AGAINST THE STATE, DOCS AND THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE BARRED BY THE ELEVENTH AMENDMENT

The Eleventh Amendment bars the assertion of plaintiff's claims against the State, DOCS and the individual defendants in their official capacities in the First, Second, Fourth, Fifth and Sixth Causes of Actions.

The Eleventh Amendment to the United States Constitution bars a suit in federal court by a citizen of a state against that state, or one of its agencies, for legal or equitable relief, absent its consent to such a suit or an express statutory waiver of immunity. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144-45 (1993); Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989); and Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-101 (1984).

Similarly, the Eleventh Amendment bars suits in federal court by citizens of a state against state officials in their official capacity for any relief under federal law other than prospective equitable relief. See, e.g., Pennhurst, 465 U.S. at 101; Dube v. State University of New York, 900 F.2d 587, 594 (2d Cir. 1990), cert. denied, 501 U.S. 1211 (1991).

The State of New York has not consented to suit in federal court and does not consent to this suit against its agencies and officials. See Trotman v. Palisades Interstate Park Comm., 557 F.2d 35, 38-40 (2d Cir. 1977). Additionally, Congress did not expressly override the states' immunity in enacting 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979); Santiago v. N.Y.S. Dep't of Correctional Svc., 945 F.2d 25, 29-30 (2d Cir. 1991), cert. denied, 502 U.S. 1094 (1992). And, as discussed in Point I, Congress did not validly abrogate Eleventh Amendment immunity under Title I of the ADA.

25

## CONCLUSION

For all the foregoing reasons, defendants respectfully request that the Court dismiss

plaintiff's complaint in its entirety.


Dated: New York, New York
      June 16, 2008

                             Respectfully submitted,

                             ANDREW M. CUOMO
                             Attorney General of the
                              State of New York
                             Attorney for Defendants
                             By:

                             JULINDA DAWKINS
                             Assistant Attorney General
                             120 Broadway, 24th Floor
                             New York, New York 10271
                             (212) 416-8118


JULINDA DAWKINS
Assistant Attorney General
 of Counsel